AARON RICHARD GOLUB, ESQUIRE, PC
Attorneys for Plaintiff
34 East 67th Street -3rd Floor
New York, New York 10065
ph: 212-838-4811
fx: 212-838-4869
ARG 6056

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X Civil Action No.
SAFFLANE HOLDINGS LTD., and
ROBERT WYLDE,                                    **COMPLAINT**
                                          (Jury Trial Demanded)

                    Plaintiffs,


         -against-

GAGOSIAN GALLERY, INC.

                         Defendant.
---------------------------------------X

          Plaintiffs SAFFLANE HOLDINGS LTD. ("Safflane") and

ROBERT WYLDE ("Wylde"), by their attorney, AARON RICHARD GOLUB,

ESQUIRE, PC, as and for their complaint, allege as follows:

                         **THE PARTIES**

          1.   Plaintiff Safflane is a corporation duly

organized under the laws of the Republic of Cyprus ("Cyprus").

          2.   Plaintiff Wylde is a citizen of the United

Kingdom of Great Britain and Northern Ireland.

          3.   Defendant Gagosian Gallery, Inc. ("Defendant") is a

domestic business corporation organized under the laws of the

State of New York, and maintains its principal office and place of

business at 980 Madison Avenue, New York, New York 10075.

RECEIVED MAR 10 2011 U.S.D.C. S.D.N.Y. CASHIERS

-1-

## JURISDICTION AND VENUE

4.    This is a civil action over which this Court has
original jurisdiction under the provisions of 28 U.S.C. §
1332(a)(2); the diversity jurisdiction statute.   Complete
diversity of citizenship exists between all proper parties to
this action and the amount in controversy exceeds the sum or
value of seventy-five thousand dollars ($75,000.00), exclusive
of interest and costs.

5.    Plaintiff Safflane is a corporation duly
organized under the laws of Cyprus, is a citizen of Cyprus, and
maintains its principal place of business in Nicosia, Cyprus.
Plaintiff Wylde is a citizen of the United Kingdom of Great
Britain and Northern Ireland and is an individual plaintiff
herein.   Plaintiffs assert claims arising from contractual
relationships with Defendant.

6.    The complaint seeks compensatory damages in
excess of Six Million Dollars ($6,000,000.00), exclusive of
interest and costs.   Accordingly, the amount in controversy is
in excess of the statutory minimum of seventy-five thousand
dollars ($75,000.00).

7.    Venue is proper in this District pursuant to 28
U.S.C. § 1392(a)(1) and (2), because (a) Defendant resides in
this District; and (b) a substantial portion of the events and
omissions giving rise to plaintiffs' claims occurred in this

District.

## FACTUAL BACKGROUND

**A.   The Defendant, and the World Renowned Artists
      Mark Tansey and Richard Prince**

8.   Defendant, established in 1979 by Lawrence G. Gagosian ("Gagosian"), is reputedly one of the most important contemporary art galleries in the world and maintains three art galleries in New York City.[1] Defendant is wholly owned and is principally managed by Gagosian.  Defendant has represented the world-renowned artist Mark Tansey ("Tansey") since 2004 and has represented the renowned artist Richard Prince ("Prince") since approximately 2005 on a non-exclusive basis and, upon information and belief, commencing in 2008 on an exclusive basis.

9.   Tansey was born in 1949 in San Jose, California. He is an American postmodern painter best known for monochromatic works, and elaborate paintings incorporating hidden text, images and symbols.  Tansey's works of art sell for millions of dollars privately and at auction.  Defendant is, or ought to be, or should have been, familiar with every business and creative aspect of Tansey's works necessary to effectively represent him as his gallerist; otherwise,

---

1    Defendant maintains ten gallery locations throughout the world at these locations: New York City (three locations); Beverly Hills; London (two locations); Rome; Athens; Paris; Geneva and Hong Kong.

Defendant would not have been able to successfully represent Tansey since 2004.

10.  Prince was born in 1949 in the Republic of Panama, is an American artist who bases his artistic work predominantly on the work of other artists and calls it "appropriation art."  Prince's works of art sell for millions of dollars privately and at auction. Defendant is, or ought to be, or should have been, familiar with every business and creative aspect of Prince's works necessary to effectively represent him as his gallerist; otherwise Defendant would not have been able to successfully represent Prince since 2005.

## TANSEY CLAIMS

**B.    The Sale of Tansey's "The Innocent Eye Test" (1981) To Plaintiff Safflane By Defendant**

11.  In or about late July, 2009, Defendant, by John Good ("JG"), one of Defendant's most senior and experienced sales persons, offered for sale to plaintiff Safflane by its authorized representative Wylde, a painting (the "Tansey Painting") described in the invoice of sale dated July 31, 2009, as follows:

> MARK TANSEY
> *The Innocent Eye Test,* 1981
> Oil on canvas
> 78 x 120 inches
> 198.1 x 304.8cm
> (TANSE 1981.0001

12.  No sale of art was or is made by Defendant

-4-

without the express authority and supervision of Defendant's principal Gagosian, including the sales set forth below in which Gagosian made all significant and final business decisions.

13. In 2004 a special relationship developed between the parties based on several factors, including the following: Plaintiffs actively collected the works of Tansey, who was exclusively represented by Defendant and whose paintings were marketed and sold on the primary market through Defendant; Defendant, for its part, specifically sought works of art to improve and complement Plaintiffs' art collection;[2] and Defendant rendered written appraisals on Plaintiffs' artworks for Plaintiffs' insurance company.

14. Between on or about July 20, 2009 to and including the date plaintiff Safflane was invoiced on July 31, 2009, JG represented, assured and warranted to plaintiff Wylde in New York, orally and in writing, in sum and/or substance, by telephone, in person and/or by e-mail, the following:

> i. That Defendant could and would convey to plaintiff Safflane good and unencumbered title to the Tansey Painting;
>
> ii. That Charles Cowles ("CC"), a well-known New York City art dealer, was rightfully in possession of the Tansey Painting;

---

2    Commencing in 2004 Plaintiffs engaged in no less than 10 transactions with Defendant through JG (purchasing nine works of art, including one Tansey painting, for a total of $5,100,000.00).

iii. That prior to CC's having taken possession of the Tansey Painting, such work had been located and exhibited at the The Metropolitan Museum of Art (the "Met") located at 1000 Fifth Avenue, New York City and that the Tansey Painting had been properly returned to CC by the Met; and

iv. That CC had advised JG that CC had had a disagreement, described to Wylde by JG as a spat, with the Met's new director (allegedly Gary Tinterow, who replaced the deceased renowned curator William Lieberman as the Chairman of the Met's Department of Nineteenth Century, Modern and Contemporary Art), and as a result the Tansey Painting was no longer exhibited at the Met, had been returned to CC, was now owned by CC and could be sold to Safflane by Defendant.

15. JG repeatedly represented and stressed to Wylde the excellent provenance of the Tansey Painting (e.g., that it had previously been exhibited at the Met, one of the most prestigious museums in the world) as a major selling point and inducement for plaintiff Safflane to purchase the Tansey Painting, which representations were made in conversations with Wylde in New York City commencing on or about July 20, 2009 through the date plaintiff Safflane was invoiced for the Tansey Painting on July 31, 2009.

16. JG's representations to Wylde, in words and/or in sum or substance, in New York City, during the period commencing on or about July 20, 2009 through the date plaintiff Safflane was invoiced on July 31, 2009, concerning the Tansey Painting's exhibition history at the Met which enhanced its value and/or provenance; the Tansey Painting's iconic status; and the

-6-

scarcity of quality Tansey works of art in the secondary art market were all material inducements for plaintiff Safflane to consummate the sale of the Tansey Painting.

17.   JG's representations, assurances and warranties that the Tansey Painting had been returned to CC and could be sold to plaintiff Safflane by Defendant, were confirmed by JG arranging for Wylde to view the Tansey Painting at CC's gallery which was located at the same premises as CC's residence, then located at 84 Mercer Street, New York City.  On or about July 27, 2009, Wylde and JG viewed the Tansey Painting which was hanging on a wall in the gallery portion of CC's residence.

18.   On July 27 and 28, 2009 and at other times during the period commencing July 21, 2009 and ending July 31, 2009, JG responded to Wylde's questions concerning title to and ownership of the Tansey Painting by assuring and reassuring Wylde, in words and/or in sum or substance, in New York City, that the Tansey Painting had been properly returned to CC by the Met, CC owned it, it could be sold to Safflane by Defendant, and Defendant could and would convey to plaintiff Safflane good and unencumbered title to the Tansey Painting.

19.   The facts, circumstances and reasons relating to Wylde's justifiable reliance on JG's representations and assurances made in New York City during the period commencing July 20, 2009 through the date plaintiff Safflane was invoiced

-7-

for the Painting on July 31, 2009, were as follows:

    i.   During and/or shortly after the viewing at CC's residence, JG again reassured and represented to Wylde, in words and/or in sum or substance, that the Tansey Painting was no longer being exhibited at the Met, the Tansey Painting had been properly returned to CC by the Met, CC owned it and it was hanging on CC's wall, and the work could be sold to Safflane by Defendant;

    ii.   JG was acting on behalf of one of the most reputable and renowned contemporary art dealers in the world;

    iii. CC was a well known New York City art dealer who was allegedly retiring from the business and was selling the Tansey Painting as part of winding down CC's art dealership;

    iv.  Plaintiff Safflane and/or Wylde had previously consummated several art transactions with Defendant through JG, in excess of $5,000,000.00, and a special relationship developed, as set forth above, between Wylde and JG including one of trust and confidence;

    v.   Defendant was uniquely and professionally situated in the art world to research and to evaluate the truth or falsity of CC's representations, having dealt with the Met in the past, knew key museum personnel and curators as well as knew exactly how to source and verify the relevant information from the Met relating to the Tansey Painting. The lay Plaintiffs had no such capability; and

    vi.  JG's foregoing representations concerning ownership and title of the Tansey Painting were rational, credible and there was no reason for Wylde to doubt any of the foregoing.

    20.  At all relevant times, Wylde believed that Defendant was acting as a principal in the sale of the Tansey Painting with respect to plaintiff Safflane and that such sales

-8-

transaction would be consummated directly between plaintiff Safflane and Defendant acting as a principal.

21.  Prior to 2009, and well in advance of the sale of the Tansey Painting to Safflane, the Met had a 31% ownership interest in the Tansey Painting, with a further agreement and commitment that the balance of ownership of the Tansey Painting was to be gifted/donated at or before the death of Ms. Jan Cowles (who is CC's mother) and/or CC.  According to the following documents on file at the Met, the Met obtained its partial ownership of the Tansey Painting as follows:

> i.   A Promised Gift for Individual Donor (signed on the Met's gift form) executed by CC in 1988, giving a one percent (1%) interest in the Tansey Painting to the Met;
>
> ii.  Offer of a Promised Gift (signed on the Met's gift form) executed by Ms. Jan Cowles in 1993, giving a fifty percent (50%) interest in the Tansey Painting to the Met;
>
> iii. Offer of Partial Interest Gift (signed on the Met's gift form) executed by Ms. Jan Cowles in 2003, giving a twenty percent (20%) interest in the Tansey Painting to the Met;
>
> iv.  Offer of Partial Interest Gift (signed on the Met's gift form) executed by Ms. Jan Cowles in 2004, giving a ten percent (10%) interest in the Tansey Painting to the Met.

22.  Had Defendant performed proper and customary due diligence based in part on access to the Met's staff and professional relationships between Defendant and the Met, which plaintiff Safflane did not enjoy, Defendant would have learned

that the Met maintained and continued to maintain an ownership interest in the Tansey Painting well before the time Defendant sold the Tansey Painting to plaintiff Safflane, that CC did not own the Tansey Painting, that it could not be sold to plaintiff Safflane and that good and clear title could not pass to plaintiff Safflane.

23. In the alternative, Defendant knew or should have known at all relevant times that it did not have the right to make representations to plaintiff Safflane regarding Defendant's ownership, CC's alleged rights, and control of the Tansey Painting, upon which Safflane justifiably relied to its detriment and was thereby damaged; or, in the alternative, Defendant acted with reckless disregard therewith in making such representations.

24. On July 31, 2009, Defendant conveyed and sold the Tansey Painting to plaintiff Safflane for a purchase price of $2,500,000.00 and issued to plaintiff Safflane an invoice dated July 31, 2009 for the sale of the Tansey Painting. Such invoice also purported to pass title from Defendant to Safflane conditioned upon payment in full, stating in pertinent part "Title does not pass until payment in full has been received." Payment in full was made on or about August 5, 2009 and thereafter the Tansey Painting was delivered to plaintiff Safflane.

-10-

25.  On or about April 2, 2010, Defendant's counsel formally advised Safflane via email incorporating a memorandum dated April 2, 2010, <u>inter</u> <u>alia</u>, that the Met owned a 31% undivided interest in the Tansey Painting, Defendant was not authorized in any way to sell the Tansey Painting and the sale of the Tansey Painting was extremely embarrassing for Defendant.

<u>**PRINCE CLAIM**</u>

**C.    The Sale of Prince's "Millionaire Nurse" (2002)
To Plaintiff Wylde By Defendant**

26.  On October 15, 2009, Defendant showed plaintiff Wylde the following painting:

> *Millionaire Nurse*
> RICHARD PRINCE (b. 1949)
> Signed, titled and dated 2002 on the overlap
> Ink jet print and acrylic on canvas
> 58 x 36 in. (147.3 x 91.4 cm) (the "Prince Painting").

27.  On October 16, 2009, Defendant gave plaintiff Wylde a fact sheet on the Prince Painting.

28.  On Friday October 23, 2009, Defendant, by its sales person JG, sold to plaintiff Wylde the Prince Painting for a purchase price of $2,200,000.00.

29.  Defendant issued to plaintiff Wylde an invoice dated October 23, 2009 on the same day as the sale described above, memorializing the sale of the Prince Painting to plaintiff Wylde for the sum of $2,200,000.00 (the "Prince Agreement").

-11-

30.  Two days later, on Sunday October 25, 2009, JG e-mailed plaintiff Wylde and advised him, <u>inter alia</u>, that the owner of the Prince Painting had withdrawn it from sale and the sale was accordingly cancelled.

31.  Subsequently, JG advised plaintiff Wylde that he had lied to plaintiff Wylde in such October 25, 2009 e-mail and advised plaintiff Wylde that the truth was that the owner of the Prince Painting had not withdrawn it from sale but that in fact Defendant had received a better offer, i.e., an offer higher in amount than the $2,200,000.00 offer Defendant had already accepted from plaintiff Wylde.

32.  Upon information and belief, Defendant has a business practice of entering into a binding agreement to sell a work of art ("Contract No. 1") and thereafter, but prior to the time, and even subsequent to the time, Defendant issues an invoice for Contract No. 1, Defendant unlawfully seeks higher offer(s) for the same work of art, and upon receiving such higher offer(s), Defendant unlawfully repudiates and/or rejects Contract No. 1 and accepts a higher offer, to the detriment of Contract No. 1's original purchaser.

### AS AND FOR A FIRST CAUSE OF ACTION
(Tansey Painting - Breach of Express Warranty of Title)

33.  Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein. Defendant's representations and description made in July, 2009 concerning

-12-

the Tansey Painting and title thereto was an affirmation of fact or promise made by the seller to the buyer relating to the Tansey Painting which was a material part of the basis of the Tansey Painting sale to plaintiff Safflane.

34. At the time of the sale of the Tansey Painting to plaintiff Safflane, and prior thereto and as a part thereof, and to induce plaintiff Safflane to purchase the Tansey Painting, Defendant represented and warranted to plaintiff Safflane, _inter alia_, that the Tansey Painting was no longer being exhibited at the Met, had been returned to CC, could be sold to Safflane, and good, clear and unencumbered title to the Tansey Painting would be conveyed to plaintiff Safflane.

35. Plaintiff Safflane purchased the Tansey Painting relying on such representations and warranties.

36. Defendant's representations and warranties in July 2009 constitute an express warranty and/or guarantee that Defendant could and would convey to plaintiff Safflane good, clear and unencumbered title to the Tansey Painting and/or that plaintiff Safflane would receive good, clear and unencumbered title to the Tansey Painting.

37. As a result of the foregoing, plaintiff Safflane has been damaged in a sum reflecting the value of the Tansey Painting at the time of trial, exceeding Six Million Dollars ($6,000,000.00), the precise amount to be proven at trial, with

appropriate legal interest, including, without limitation, all consequential and incidental damages proximately related thereto.

### AS AND FOR A SECOND CAUSE OF ACTION
(Tansey Painting - Breach of Implied Warranty of Title)

38.  Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

39.  Defendant's contract to sell the Tansey Painting contained an implied warranty that the title conveyed was to be good, and its transfer rightful, and that the Tansey Painting was to be delivered to plaintiff Safflane free from any lien, encumbrance or claim by third parties.

40.  Defendant's contract to sell the Tansey Painting contained an implied warranty that the Tansey Painting was to be delivered free of the claim of any third person by way of infringement or the like.

41.  Defendant's representations in July 2009 constitute an implied warranty and/or guarantee that Defendant could and would convey to plaintiff Safflane good, clear and unencumbered title to the Tansey Painting and/or that plaintiff Safflane would receive good, clear and unencumbered title to the Tansey Painting.

42.  Plaintiff Safflane purchased the Tansey Painting relying on such warranties and/or guaranties.

43.  As a result of the foregoing, plaintiff Safflane

-14-

has been damaged in a sum reflecting the value of the Tansey Painting at the time of trial, exceeding Six Million Dollars ($6,000,000.00), the precise amount to be proven at trial, with appropriate legal interest including, without limitation, all consequential and incidental damages proximately related thereto.

## AS AND FOR A THIRD CAUSE OF ACTION
(Tansey Painting - Breach of Implied Warranty of Merchantability)

44. Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

45. Defendant's agreement to sell the Tansey Painting contained an implied warranty of merchantability that, _inter alia_, title to the Tansey Painting was to pass without objection in the trade pursuant to the description in the invoice, was fit for the ordinary purposes for which goods such as the Tansey Painting are used, and would conform to the promises or affirmations of fact made by Defendant.

46. Plaintiff Safflane purchased the Tansey Painting relying on such warranties.

47. As a result of the foregoing, plaintiff Safflane has been damaged in a sum reflecting the value of the Tansey Painting at the time of trial, exceeding Six Million Dollars ($6,000,000.00), the precise amount to be proven at trial, with appropriate legal interest including, without limitation, all

-15-

consequential and incidental damages proximately related thereto.

### AS AND FOR A FOURTH CAUSE OF ACTION
(Tansey Painting - Breach of Contract)

48. Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

49. On July 31, 2009, plaintiff Safflane and Defendant entered into a contract, for good and valuable consideration, in which Defendant agreed to sell the Tansey Painting to plaintiff Safflane for a purchase price of $2,500,000.00, and Defendant thereafter issued to plaintiff Safflane an invoice dated July 31, 2009 for the sale of the Tansey Painting.

50. On or about August 5, 2009, plaintiff Safflane paid Defendant the sum of $2,500,000.00, thereby performing the contract on its part to be performed.

51. Defendant breached its agreement by failing and neglecting to perform its obligations by not conveying to plaintiff Safflane good, clear and unencumbered title to the Tansey Painting.

52. As a result of the foregoing, plaintiff Safflane has been damaged in a sum reflecting the value of the Tansey Painting at the time of trial, exceeding Six Million Dollars ($6,000,000.00), the precise amount to be proven at trial, with appropriate legal interest including, without limitation, all

-16-

consequential and incidental damages proximately related thereto.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Tansey Painting - Fraud)

53. Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

54. Defendant failed to inform plaintiff Safflane that the Met owned a 31% undivided interest in the Tansey Painting and that Defendant was not legally authorized to transfer to plaintiff Safflane clear title to the Tansey Painting.

55. Defendant knew or should have known that its representations to plaintiff Safflane's representative Wylde concerning title to the Tansey Painting were false, that such misrepresentations and omissions were made with knowledge of their falsity and with the intent and for the purpose of deceiving and defrauding and inducing plaintiff Safflane to purchase the Tansey Painting or were made with reckless disregard to whether or not such representations were true or false. Defendant communicated such fraudulent misrepresentations concerning the Tansey Painting and intended that such material misrepresentations and omissions be taken as true and caused and induced plaintiff Safflane to actually and justifiably rely on the misrepresentations and omissions of Defendant set forth above by purchasing the Tansey Painting.

56. The specifics of the fraud are alleged in the Tansey Claims section above in paragraphs 11 through 25.

57. Defendant had the opportunity to commit fraud as, upon information and belief, CC was in a desperate financial condition, and was exploited by Defendant who seized upon and exploited CC's weak financial position to purchase the Tansey Painting on very favorable (discounted) terms. Defendant had the motive to commit fraud as it could purchase the Tansey Painting on such favorable terms, as aforesaid, and reap a high profit margin from the sale to plaintiff Safflane and JG and Defendant could maintain a fruitful client relationship with Safflane and Wylde.

58. As a result of the foregoing, plaintiff Safflane has been damaged in a sum reflecting the value of the Tansey Painting at the time of trial, exceeding Six Million Dollars ($6,000,000.00), the precise amount to be proven at trial, with appropriate legal interest including, without limitation, all consequential and incidental damages proximately related thereto.

### AS AND FOR A SIXTH CAUSE OF ACTION
(Negligent Misrepresentation)

59. Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

60. Defendant is and was in a special position of confidence and trust with Plaintiffs, as more fully set forth in

paragraphs 13 and 19 above. Defendant has and had a unique and specialized expertise in the art market including, without limitation, relationships with museums such as the Met, as more fully set forth in paragraphs 8-10 and 19(v) above.

61. Defendant had a duty to impart accurate and correct information to the Plaintiffs.

62. The Defendant made reckless, negligent and false representations to Plaintiffs (see paragraph 14), which Defendant should have known were untrue and inaccurate. Such representations were known by the Defendant to be desired by plaintiff Safflane for the purpose of purchasing the Tansey Painting for the sum of $2,500,000.00 and enlarging and enhancing plaintiffs' collection of Tansey paintings.

63. When Defendant was made aware of the possible title issues related to the Tansey Painting, Defendant failed to discharge its duty of reasonable care by not making proper inquiry to confirm CC's alleged rights or the truth or falsity of CC's statements related to the title and ownership of the Tansey Painting as set forth above (including paragraph 14) and Plaintiff Safflane reasonably relied upon Defendant's incomplete representations to its detriment. Defendant was also negligent by failing to inform Plaintiff Safflane that it took no steps to contact the Met to confirm CC's alleged rights to the Tansey Painting.

64. Plaintiff Safflane would not have offered to purchase the Tansey painting much less consummate its purchase, had it known title and ownership were an issue.

65. Defendant's actions proximately caused Plaintiff Safflane damage.

66. As a result Plaintiff Safflane has been damaged in a sum reflecting the value of the Tansey Painting at the time of trial, exceeding Six Million Dollars ($6,000,000.00), the precise amount to be proven at trial, with appropriate legal interest including, without limitation, all consequential and incidental damages proximately related thereto.

## AS AND FOR A SEVENTH CAUSE OF ACTION
(Tansey Painting – Violation of New York
Arts and Cultural Affairs Law § 13.03)

67. Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

68. Defendant violated the New York Arts and Cultural Affairs Law § 13.03 as Defendant, intending to defraud, deceive and/or injure plaintiff Safflane, made and issued an invoice for the Tansey Painting attesting that title and accompanying authenticity of the Tansey Painting shall pass to plaintiff Safflane when payment in full had been received, when in fact,

good, clear and unencumbered title did not pass to plaintiff Safflane after payment in full had been received by Defendant.

69. The Tansey Painting invoice relating to title and authenticity is false and Defendant violated the law as Defendant could not pass title to the Tansey Painting to plaintiff Safflane because, upon information and belief, Defendant never had title to the Tansey Painting. Good, clear and unencumbered title to the Tansey Painting could not pass to plaintiff Safflane when it made payment to Defendant.

70. As a result of the foregoing and Defendant's violation of New York Arts and Cultural Affairs Law § 13.03, plaintiff Safflane has been damaged in a sum reflecting the value of the Tansey Painting at the time of trial, exceeding Six Million Dollars ($6,000,000.00), the precise amount to be proven at trial, with appropriate legal interest including, without limitation, all consequential and incidental damages proximately related thereto.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Prince Painting - Repudiation of Contract)

71. Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

72. On October 23, 2009, plaintiff Wylde and Defendant entered into an agreement for plaintiff Wylde to purchase the Prince Painting for the sum of $2,200,000.00 as set

forth above.

73. At all times herein mentioned, plaintiff Wylde was ready, willing, and able to perform the terms and conditions of the Prince Agreement on his part to be performed, including, without limitation, payment of the purchase price therefor in full.

74. On October 25, 2009, without legal reason or cause, Defendant unlawfully repudiated the Prince Agreement and failed and refused to deliver the Prince Painting to plaintiff Wylde because Defendant had received a higher offer.  Upon information and belief, Defendant sold the Prince Painting to another buyer with a higher offer, notwithstanding that the Defendant and plaintiff Wylde had entered into a binding agreement, i.e. the Prince Agreement.

75. As a result of the foregoing, plaintiff Wylde has been damaged in a sum exceeding One Million Dollars ($1,000,000.00), the precise amount to be proven at trial, with appropriate legal interest, including, without limitation, all consequential and incidental damages proximately related thereto.

### AS AND FOR A NINTH CAUSE OF ACTION
(Deceptive and Misleading Business Practices - GBL sec. 349 et. seq.)

76. Plaintiffs repeat and reallege all of the

foregoing allegations as if fully set forth herein.

77. Defendant has engaged in deceptive and misleading business practices in violation of New York General Business Law Sections 349 et. seq. as set forth above in par. 32.

78. Defendant is an art gallery open to the public at large and which sells works of art to the public at large, has engaged in deceptive and dishonest misconduct which has a broad impact on the public at large and collectors of art.

79. Defendant has engaged in consumer related activity affecting consumers at large. Defendant, by maintaining a business practice of entering into a binding agreement to sell a work of art and thereafter unlawfully seeking and/or accepting higher offer(s) for the same work of art and unlawfully repudiating and/or rejecting the prior binding agreement to the detriment of the original purchaser, utilizes tactics which were and are deceptive in material respects and plaintiffs have been injured thereby.

80. As a result of the foregoing, a cause of action for deceptive and misleading business practices exists against Defendant in favor of plaintiff Wylde and plaintiff Wylde has been damaged in a sum exceeding One Million Dollars ($1,000,000.00), the precise amount to be proven at trial, with appropriate legal interest, including, without limitation, all consequential and incidental damages proximately related

thereto.

## JURY DEMAND

Plaintiffs demand a jury for all claims stated herein.

WHEREFORE, plaintiffs demand judgment:

a.   On the First Cause of Action, against Defendant in favor of plaintiff Safflane, damages reflecting the value of the Tansey Painting at the time of trial, in a sum exceeding Six Million Dollars ($6,000,000.00), the precise amount to be proven at trial, with appropriate legal interest including, without limitation, all consequential and incidental damages proximately related thereto;

b.   On the Second Cause of Action, against Defendant in favor of plaintiff Safflane, damages reflecting the value of the Tansey Painting at the time of trial, in a sum exceeding Six Million Dollars ($6,000,000.00), the precise amount to be proven at trial, with appropriate legal interest including, without limitation, all consequential and incidental damages proximately related thereto;

c.   On the Third Cause of Action, against Defendant in favor of plaintiff Safflane, damages reflecting the value of the Tansey Painting at the time of trial, in a sum exceeding Six Million Dollars ($6,000,000.00), the precise amount to be proven at trial, with appropriate legal interest including, without

limitation, all consequential and incidental damages proximately related thereto;

      d.   On the Fourth Cause of Action, against Defendant in favor of plaintiff Safflane, damages reflecting the value of the Tansey Painting at the time of trial, in a sum exceeding Six Million Dollars ($6,000,000.00), the precise amount to be proven at trial, with appropriate legal interest including, without limitation, all consequential and incidental damages proximately related thereto;

      e.   On the Fifth Cause of Action, against Defendant in favor of plaintiff Safflane, damages reflecting the value of the Tansey Painting at the time of trial, in a sum exceeding Six Million Dollars ($6,000,000.00), the precise amount to be proven at trial, with appropriate legal interest including, without limitation, all consequential and incidental damages proximately related thereto;

      f.   On the Sixth Cause of Action, against Defendant in favor of plaintiff Safflane, reflecting the value of the Tansey Painting at the time of trial, in a sum exceeding Six Million Dollars ($6,000,000.00), the precise amount to be proven at trial, with appropriate legal interest including, without limitation, all consequential and incidental damages proximately related thereto;

      g.   On the Seventh Cause of Action, against Defendant

in favor of plaintiff Safflane, reflecting the value of the Tansey Painting at the time of trial, in a sum exceeding Six Million Dollars ($6,000,000.00), the precise amount to be proven at trial, with appropriate legal interest including, without limitation, all consequential and incidental damages proximately related thereto;

h.   On the Eighth Cause of Action, against Defendant in favor of plaintiff Wylde, damages in a sum exceeding One Million Dollars ($1,000,000.00), the precise amount to be proven at trial, with appropriate legal interest including, without limitation, all consequential and incidental damages proximately related thereto;

i.   On the Ninth Cause of Action, against Defendant in favor of plaintiff Wylde, damages in a sum exceeding One Million Dollars ($1,000,000.00), the precise amount to be proven at trial, with appropriate legal interest including, without limitation, all consequential and incidental damages proximately related thereto; and

j.   Granting to the plaintiffs such other and further relief as this Court shall deem just and proper, together with

the costs and disbursements of this action, and reasonable

attorneys' fees.

Dated:      New York, New York
            March 10, 2011

                              Respectfully submitted,


                              _____
                              AARON RICHARD GOLUB, ESQUIRE, P.C.
                              Attorneys for Plaintiffs
                              34 East 67th Street – 3rd Floor
                              New York, New York 10065
                              ph: 212-838-4811
                              fx: 212-838-4869
                              ARG 6056

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAFFLANE HOLDINGS LTD., and
ROBERT WYLDE,

Plaintiffs,

-against-

GAGOSIAN GALLERY, INC.

Defendant.

**SUMMONS AND COMPLAINT**

*Attorney for Plaintiffs*
*Office and Post Office Address, Telephone*
Aaron Richard Golub, Esquire, P.C.
34 East 67th Street 3rd Floor
New York, New York 10065
212-838-4811

To

Attorney(s) for

Service of copy of the within is hereby admitted

Dated

..................................................
Attorney(s) for

---

**NOTICE OF ENTRY**
PLEASE take notice that the within is a (certified)
true copy of a
duly entered in the office of the clerk of the within
named court on

Dated,

Yours, etc.

Attorney for

*Office and Post Office Address*
Aaron Richard Golub, Esquire, P.C.
34 East 67th Street 3rd Floor
New York, New York 10065

To

Attorney(s) for

**NOTICE OF SETTLEMENT**
PLEASE take notice that an order
of which the within is a true copy will be presented
for settlement to the Hon.
on
at                                    M.

Dated,

Yours, etc.

Attorney for
Aaron Richard Golub, Esquire, P.C.
34 East 67th Street – 3rd Floor
New York, New York 10065